IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01099–KMT

RICHARD ANTHONY ROYBAL,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

**ORDER**

---

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Richard A. Roybal's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

**FACTUAL AND PROCEDURAL BACKGROUND**

Claimant applied for DIB and SSI in August 2012, alleging that he had been disabled by a range of impairments, including migraines, neck and back problems, diabetes, high blood pressure, insomnia, Post-Traumatic Stress Disorder, anxiety, stress, and depression. (*See* Doc. No. 10, Social Security Administrative Record ["AR"] at 170, 174, 205.) The Commissioner denied both applications. (*Id.* at 112, 116, 119, 123.) Following the denials, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 36–72, 127.) At the hearing, the ALJ heard testimony from the claimant about his symptoms and limitations, and

consulted a vocational expert about whether a person with the claimant's limitations would be able to perform the claimant's past work. (*Id.* at 39–65, 65–68.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was still capable of performing past relevant work. (*Id.* at 28.) The Appeals Council subsequently denied Claimant's request for review (*id.* at 3), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

**STATUTORY AND REGULATORY BACKGROUND**

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. §§ 423, 1382. To receive either DIB or SSI, a claimant must be disabled. §§ 423, 1382. The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

**STANDARD OF REVIEW**

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and case law. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. A finding is supported by substantial evidence if it is

supported by “more than a scintilla, but less than a preponderance” of evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987)). Evidence is insubstantial when it is “overwhelmed by other evidence in the record or constitutes mere conclusion.” *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court may not “reweigh the evidence” or “substitute its judgment” for that of the Commissioner.” *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987). So long as there is substantial evidence to support the ALJ’s decision, the decision must stand, even if the Court would have reached a different result. *See Ellison*, 929 F.2d at 536.

**ANALYSIS**

Claimant argues that the ALJ’s step-four analysis, including the ALJ’s Residual Functional Capacity (“RFC”) assessment and the ALJ’s conclusion that the claimant could perform past relevant work, is unsupported by substantial evidence. (*See* Doc. No. 13 [Opening Br.] at 20–28, filed Dec. 8, 2014.) Claimant also contends that the ALJ erred in his analysis at step five (*see id.* at 28–33), which the ALJ had conducted as an alternative to his analysis at step four (*see* AR at 29).

**1. The ALJ’s Step-Four RFC Assessment**

Claimant argues that the ALJ’s RFC assessment is not supported by substantial evidence for two main reasons: a) the physical and mental restrictions resulting from Claimant’s physical impairments are not supported by substantial evidence, and b) the ALJ failed to consider Claimant’s non-severe impairments in the RFC assessment. (*See* Opening Br. at 20–28.)

Before completing step four of the disability review process, the ALJ must assess the claimant’s RFC, which is the most the claimant can do in a work setting on a regular and

continuing basis despite the limitations imposed by his or her impairments. SSR 96-8p, 1996 WL 374184 at *1, 3.[1] When determining the claimant's RFC, the ALJ must consider all the relevant evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the ALJ's written decision, the ALJ must explain how the evidence supports each of his or her conclusions. *Id.* at *7. As part of that explanation, the ALJ must "cite specific medical facts and nonmedical evidence and explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.*

**a. The RFC Restrictions Resulting from Claimant's Physical and Mental Impairments**

Though the Claimant argues that the physical and mental restrictions found by the ALJ and used in the RFC assessment are not supported by substantive evidence, a deeper analysis of these arguments reveals that the claimant's real argument is with the ALJ's assignment of weight to the opinions of certain medical experts. (*See* Opening Br. at 20–26.) In particular, Claimant faults the ALJ for discounting the opinions of Drs. Jendry, Blum, and Frommelt, who each opined that the claimant had more or greater limitations than the ALJ included in the claimant's RFC. (*See id.*)

The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing medical source opinions, and, ultimately, determining whether claimants are disabled within the meaning of the Act. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Generally, a Claimant's treating physician's opinion is afforded the most weight of any medical opinion. *See* 20 C.F.R. § 404.1527(c)(2). Examining source opinions are also typically afforded more weight

[1] An "SSR" is a Social Security Administration ruling. These rulings, which are final opinions and orders published under the authority of the Commissioner of Social Security, are binding on "all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

than non-examining sources, and non-examining sources are usually afforded the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c)(1). When deciding how much weight to assign a medical source's opinion, the ALJ must consider six factors:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
> (3) the degree to which the physician's opinion is supported by relevant evidence;
>
> (4) consistency between the opinion and the record as a whole;
>
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
> (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927. Though the ALJ must consider each factor, the ALJ need not discuss each factor in the written decision. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ afforded greater weight the opinion of a non-examining source, Dr. Kreider, than to part of the opinions of two examining doctors, Drs. Jendry, and Blum, and one non-examining physician, Dr. Frommelt. (*See* AR at 26–27.) The ALJ first justified this assignment of weight by pointing to evidence indicating that during Dr. Jendry's examination of the claimant, the claimant exaggerated his symptoms and tried to distort the doctor's findings. (*See id*. at 24–25, 27.) Drawing from Dr. Jendry's reports, the ALJ noted Dr. Jendry's observation that the claimant's "severely restricted range of motion in the neck and low back" and movement in a "herky-jerky" fashion "seemed to be a conscious effort on the part of the

claimant." (*See id.* at 24–25.) The ALJ characterized the claimant's behavior as "poor effort," explaining that the claimant was "consciously distorting the nature and extent of his functional limitations."

The ALJ then noted Claimant's similar "poor effort" during the claimant's mental examination by Dr. Blum. (*See id.* at 26–28.) The ALJ highlighted Dr. Blum's observation that the claimant displayed a "significant dearth of knowledge," and that the claimant's inability to remember the capital of the United States "seems factitious." (*See id.* at 27, 671.) The ALJ also highlighted the claimant's statement to Dr. Blum that he had abstained from alcohol for "20 or 30 years." (*Id.* at 26.) The ALJ stated, "Dr. Blum pointed out that this statement is directly contradicted by recent medical reports of intoxication and alcohol dependence." (*Id.*) Despite crediting the observations of Dr. Blum and her recognition of the inconsistencies with the claimant's statements, the ALJ pointed out that Dr. Blum's findings of the claimant's supposed illiteracy and visual hallucinations were contradicted by recent exams, other medical evidence, and claimant's own omissions. (*See id.* at 27.) The ALJ then concluded that Dr. Blum's mental status exam findings were unreliable. (*Id.*)

The ALJ also observed that Claimant's work history as a floor technician contradicted Dr. Jendry's opinions about Claimant's physical limitations. (*See id.* at 27.) The claimant indicated on his work history forms that when he worked as a floor technician, he lifted supplies weighing 50 pounds, and stood and walked ten hours a day. (*Id.* at 224.) The vocation expert the ALJ consulted at the hearing indicated that this job was a "medium work" job, requiring a medium exertion level. (*Id.* at 66.) After the ALJ found that there was no persuasive evidence that Claimant's condition had worsened since the allegedly debilitating impairments began

during his military service in the 1970s, the ALJ concluded that the somewhat demanding physical requirements of the floor technician job undermined Dr. Jendry's opinion that the claimant could stand or walk for merely a half an hour at a time. (*See id.* at 24, 27.)

The ALJ also discounted Dr. Jendry's physical examination recommendations, in part, because they were not clear. (*See id.* at 27.) As pointed out by the ALJ, Dr. Jendry recommended that Claimant could sit "a number of hours" and could "probably" stand or walk two to three total hours in an eight hour day. (*Id.*) The ALJ said these opinions were "somewhat vague and uncertain." (*Id.*)

The ALJ accepted Dr. Frommelt's opinion that the claimant has moderate limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods of time, but rejected Dr. Frommelt's opinion that the claimant has a moderate limitation in completing a normal workday without interruptions. (*See id*.) In support of this rejection, the ALJ cited Claimant's daily living activities and regular attendance at various support groups at the Veteran's Administration. (*See id.*)

The court finds no error with the ALJ's reasons for discounting the opinions of Drs. Jendry, Blum, and Frommelt. There is sufficient evidence to suggest that the claimant was "consciously distorting" the results of Dr. Jendry's and Dr. Blum's examinations. An ALJ is permitted to discount a medical expert's opinion when that opinion may be affected by the claimant's conscious distortion of the expert's test results. *See Oldham*, 509 F.3d at 1257 (affirming ALJ's refusal to credit treating and examining source opinions due to the claimant's "propensity to exaggerate her symptoms and manipulate test results"). Even if, as Claimant argues, Dr. Blum was aware of the claimant's deception (*see* Opening Br. at 25), that does not

render the ALJ's conclusion about Dr. Blum's opinion unsupported. The ALJ actually credited Dr. Blum's observations, but choose not to credit the results of her mental status examination. (*See* AR at 27.) This is a reasonable distinction, given that Dr. Blum identified the source of her information as "the claimant." (*See id.* at 667.) The ALJ is also permitted to use the claimant's daily living activities and regular attendance at various support groups at the Veteran's Administration as reasons to reject Dr. Frommelt's opinion that the claimant has a moderate limitation in completing a normal workday without interruptions. These are sufficient reasons to discount a medical opinion, *see* 20 C.F.R. § 404.1527(c) (listing "consistency with the evidence" as a consideration when weighing source opinions), especially when that opinion comes from a non-examining source, *Robinson*, 366 F.3d at 1084 (stating that non-examining sources are usually afforded the least weight of all).

**b. The ALJ's Consideration of the Claimant's Non-severe Impairments**

Claimant also argues that the ALJ failed to consider all of Claimant's impairments, including his mental impairments, high blood pressure, diabetes, migraine headaches, hiatal hernia, and left shoulder and vision problems, when constructing the claimant's RFC. (*See* Opening Br. at 27.) Specifically, the claimant faults the ALJ for not including in the claimant's RFC any of the "functional limitations resulting from these impairments." (*Id.* at 28.)

In the ALJ's step-two analysis, the ALJ discussed the claimant's high blood pressure, diabetes, "migraines/headaches/pinched nerve in the neck," hiatal hernia, left shoulder problems, and vision problems. (AR at 19–20.) As part of that discussion, the ALJ explained why each condition, though a medically determinable impairment, was non-severe and did not limit Claimant. (*See id.*) First, the ALJ acknowledged the claimant's high blood pressure, but stated

that there was no medical evidence that the condition caused significant, ongoing symptoms, or damage to the heart or other organs. (*Id.* at 19.) Second, the ALJ addressed the claimant's diabetes, finding that the diabetes is under control and that the medical evidence did not show that the diabetes had caused peripheral neuropathy, retinopathy, or organ damage. (*Id.*) Third, the ALJ grouped the claimant's migraines, headaches, and pinched nerve in the neck as one impairment and found that the claimant admitted in a headache questionnaire that he has headaches only one time per week, the headaches last only five to ten minutes, and they are remedied in a few minutes with over-the-counter medications. (*See id.*) Fourth, the ALJ acknowledged the claimant had a hiatal hernia, but found that the record did not indicate that the hernia had caused any significant ongoing symptoms or limitations. (*Id.* at 20.) Fifth, the ALJ found that the claimant had left shoulder tendinopathy without injury, but had not had treatment since its alleged onset. (*Id.*) The ALJ added that there was no evidence of ongoing shoulder complaints or of significant abnormalities that would explain the claimant's allegations of pain and dysfunction. (*Id.*) The ALJ also pointed out that the claimant had failed to identify the left shoulder as a condition limiting work. (*Id.*) Sixth, the ALJ acknowledged the claimant's vision problems, but noted that the claimant admitted during the hearing that he has no difficulty seeing when he takes his medication. (*See id.* at 20.) Finally, the ALJ dismissed the claimant's allegations of traumatic brain injury, right knee pain, bilateral hand pain, and hearing loss because no acceptable medical evidence supported the existence of those impairments. (*See id.*)

Just because the ALJ found medically determinable impairments, does not mean that the ALJ must also find limitations associated with those impairments. Not all medically determinable impairments lead to limitations. *See* 20 C.F.R. § 416.945 ("Your impairment(s),

and any related symptoms, such as pain, *may* cause physical and mental limitations that affect what you can do in a work setting.") (emphasis added). Defendant concedes this point when she states "the ALJ found that while Mr. Roybal's non-severe impairments did not rise to the level of severe within the meaning of the rules, they did exist and, therefore, *may* well have caused mild limitations in his ability to function." (Doc. No. 16 [Resp. Br.] at 27 [emphasis added], filed Jan. 30, 2015.) A claimant's RFC is an assessment of the most the claimant can do in a work setting on a regular and continuing basis *despite the limitations imposed by his or her impairments*. SSR 96-8p, 1996 WL 374184 at *1, 3 (emphasis added). If the ALJ finds that certain impairments do not substantially limit the claimant, as the ALJ did here during his step-two analysis, then the ALJ need not incorporate those impairments into the claimant's RFC.

In the ALJ's RFC assessment, the ALJ again indicated that he considered these impairments. As part of the ALJ's discussion of Dr. Jendry's opinion, the ALJ mentioned that the claimant told Dr. Jendry about his headaches. (*See* AR at 24.) The ALJ specifically found that Dr. Jendry's postural limitations on bending, stooping, squatting, and crouching were vague, uncertain, and not supported by the clinical exam findings. (*See id.* at 27.) As part of the ALJ's discussion of Dr. Blum, the ALJ mentioned the claimant's reports of diabetes and high blood pressure. (*See id.* at 26.) The ALJ specifically noted and discussed the claimant's difficulties maintaining concentration and attention, concluded that he believed those difficulties translated into unskilled work, and explained why additional mental limitations were unwarranted. (*See id.* at 26.) When discussing the opinion of Dr. Kreider, the state agency medical consultant, the ALJ explained why Dr. Kreider's assessment of the claimant's physical impairments (stating that the claimant could lift fifty pounds occasionally and 25 pounds frequently, stand or walk six hours of

an eight hour day, and occasionally crouch or crawl) were consistent with the record despite the claimant's claims of disabling physical impairments. (*See id.* at 26–27.) As part of his analysis of Dr. Frommelt's opinion, the ALJ not only considered but endorsed the doctor's recommendations that the claimant was moderately limited "in carrying out detailed instructions and maintaining attention and concentration for long periods of time." (*See id.* at 27.) The ALJ considered but rejected Dr. Frommelt's opinion that the claimant was moderately limited "in completing a normal workday without interruptions," and explained why. (*See id.*) Further, as part of the ALJ's final conclusion, he explained why the claimant's work as a floor technician was both consistent with the limitations in the RFC and inconsistent with those findings he rejected, which included some of these non-severe impairments. (*See id.* at 25.)

The court therefore finds that the ALJ did consider and address all of Claimant's non-severe impairments when constructing Claimant's RFC. It is clear from the whole of the ALJ's written decision that the ALJ meticulously considered every one of the claimant's alleged conditions, severe and non-severe, either expressly or implicitly. The fact that the ALJ did not explicitly discuss each impairment, or the fact that some of his discussions of the claimant's non-severe impairments were found in the step-two section of his written decision rather than the RFC section of his written decision, is insufficient to discard an otherwise legally valid decision. *See Oldham*, 509 F.3d at 1258. Common sense, not technical perfection, is the court's guide. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

**2. The ALJ's Step-Four Conclusion that Claimant Can Still Perform Past Relevant Work Despite the Limitations Imposed by his Impairments**

Claimant contends that the ALJ's conclusion that Claimant can still perform his past work despite the limitations imposed by his impairments is not supported by substantial

evidence. (*See* Opening Br. at 28–30.) As support, Claimant alleges the ALJ "made no specific findings regarding the duties of the jobs of floor technician and janitor either as performed by Mr. Roybal or as performed in the general economy, and he did not make specific inquiry of either Mr. Roybal or the vocational expert regarding the duties of these positions." (*Id.* at 24.)

At step four of the disability review process, the claimant must prove that he or she a) cannot perform a past job as he or she actually performed it, *and* b) cannot perform a past job as it is generally performed in the national economy. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993) (analyzing SSR 82–61, 1982 WL 31387.) When evaluating whether the claimant met both of these burdens, the ALJ must 1) evaluate a claimant's RFC, 2) determine the physical and mental demands of the claimant's past relevant work as actually performed and as generally performed in the national economy, and 3) compare the claimant's RFC to the demands of his or her past work to see if the claimant can still perform that work. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must make specific findings at each step or "phase." *Id*. The Commissioner's rules require the ALJ's decision contain:

1. A finding of fact as to the claimant's RFC,
2. A finding of fact as to the physical and mental demands of the claimants past job, and
3. A finding of fact that the claimant's RFC would permit return to his or her past work.

SSR 82-62, 1982 WL 31386, at *4. The ALJ cannot delegate these fact-finding responsibilities to a vocational expert. *Sissom v. Colvin*, 512 F. App'x 762, 770–71 (10th Cir. 2013). *But see Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (holding that an ALJ did not

err by relying on a vocational expert's testimony at phase two of the *Winfrey* analysis as to the job as it is generally performed).

Here, the ALJ found that the claimant was capable of performing "the occupations of floor technician and janitor as actually and generally performed." (AR at 28.) To reach this conclusion, the ALJ relied upon the testimony of the vocational expert who testified during the administrative hearing. (*See id.*) Before the ALJ consulted with the vocational expert at the hearing, the ALJ examined the claimant. (*See id.* at 65.) The vocational expert was present for this examination. (*Id.* at 36.) At no time during the examination did the claimant discuss the claimant's janitor or floor tech jobs in any level of detail. (*See id.* at 39–65.) The ALJ began his consultation of the vocational expert by confirming that the expert had reviewed the claimant's work history. (*Id.* at 65.) Then, the ALJ asked the vocational expert to classify the skill and exertion level of the claimant's past work. (*Id.* at 66.) The expert responded by classifying the claimant's past jobs by Dictionary of Occupational Titles ("DOT") number, exertion level, and skill level. (*See id.*) The expert listed the janitor and floor technician jobs as medium exertion level, unskilled—a match for the claimant's RFC. (*See id.* at 22, 66.) Later in the examination, the ALJ asked the expert whether a hypothetical person "of the same age, education, and vocational history as the claimant" would be able to perform any past work. (*Id.* at 67.) The expert responded affirmatively, and listed the janitor and floor technician jobs as work that hypothetical person could do. (*See id.*) After the hearing, in the ALJ's written decision, the ALJ stated that the expert "testified that an individual with [the claimant's] . . . RFC and the same age, education and work history as the claimant would be able to perform [the janitor and floor technician jobs] . . . as generally and actually performed." (*Id.* at 28.) The ALJ then stated that

he "accepts the testimony of the expert and finds the claimant is able to perform the occupations of floor technician and janitor as actually and generally performed." (*Id.*)

The ALJ's decision therefore contains 1) a finding of fact as to the claimant's RFC, 2) a finding of fact that the claimant's RFC would permit a return to his or her past work, and, despite the claimant's contentions, 3) a finding of fact as to the physical and mental demands of the claimants past job. The ALJ specifically asked the ALJ to classify the skill and exertion level of the janitor and floor technician jobs, the vocational expert did so, and the ALJ specifically found in his written decision that Claimant's past work was medium exertion level, unskilled. (*See id.* at 28, 66.) The ALJ was not required to inquire into any mental demands of the past jobs beyond the question of whether those jobs were "unskilled," because the RFC contained no mental limitations other than "unskilled." *See Zaricor-Ritchie*, 452 F. App'x at 825.

The question then becomes whether the ALJ's findings about the physical and mental demands of the claimant's past jobs are supported by substantial evidence. Though the ALJ asked the vocational expert whether she reviewed the claimant's work history, and the expert responded that she did, it is not clear what history the expert reviewed or how the vocational expert knew about the demands of the claimant's past work. (*See* AR at 65–66.) At the hearing, the claimant never discussed his duties as a janitor or floor technician. (*See id.* at 39–65.) The ALJ did reference in his decision a set of "work history" forms filled out by the claimant, (s*ee id.* at 25, 223–28 [referencing Exhibit B4E/2]), but those forms do not summarize the claimant's duties as a janitor (*see id.*), and neither the ALJ nor the vocational expert specifically identified those forms as being the source of the information for the expert's opinion that the claimant's past work was medium, unskilled work (*see id.* at 22–28, 65–71). For these reasons, the court

finds that the ALJ's finding that the claimant janitorial job was medium exertion, unskilled, as actually performed, is unsupported by substantial evidence. There is also not substantial support for the vocational expert's and the ALJ's conclusion that the janitor job is unskilled as it is generally performed, because the DOT lists janitor jobs as the Commissioner's equivalent of semi-skilled work. *See* DEPT. OF LABOR, NO. 382.664-010, DICTIONARY OF OCCUPATIONAL TITLES (1991); SSR 00-4p, 2000 WL 1898704, at *3 (stating that the Commissioner classifies an "SVP" of 1 to 2 as unskilled work). As a result, there is no substantial evidence that the claimant can perform the janitor job either as he actually performed that job in the past or as that job is generally performed in the economy.

However, the ALJ's findings as to how the floor technician job is both actually and generally performed are supported by substantial evidence. First, the ALJ's finding that the claimant's job as a floor technician was medium, unskilled work, as he actually performed that job, is supported by substantial evidence. The work history forms submitted by the claimant detail the claimant's actual duties as a floor technician:

Describe this job. What did you do all day? *(If you need more space, write in the "Remarks" section.)*
MAINTAIN Hospital makeing sure Floors Kept
CLEAN trash empty helping out Housekeepers
Start At 6:00 AM till 2:30PM. Stock supliss papee products.

(AR at 224.) Those duties are consistent with the DOT description of the duties of a floor technician:

> Cleans, waxes, and polishes floors by hand or machine: Removes dirt and blemishes from floor, using various cleaning solvents and compounds, according to composition of floor. Applies paste or liquid wax to floor with rags or machine. Polishes floor with electric polishing machine or weighted brush.

DEPT. OF LABOR, NO. 381.687-034, DICTIONARY OF OCCUPATIONAL TITLES (1991). The claimant's description also matches the Commissioner's definition of unskilled:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

20 C.F.R. § 404.1568. Though the claimant did have to help out housekeepers, a close reading of the claimant's summary indicates that duty was limited to making sure the floors were kept clean and the trash was emptied—both physical duties. (*See* AR at 224.)

Second, there is substantial support for the ALJ's finding that the claimant was capable of performing the floor technician job as that job is generally performed in the economy. The ALJ testified that a hypothetical person with claimant's RFC, including medium exertion and unskilled work limitations, was capable of performing the floor technician jobs. (*See id.* at 67.) Though the vocational expert did not specifically say that she was referring to how those jobs are generally performed (*see id.*), the floor technician job, as defined its DOT description, is, in fact, medium exertion level, unskilled type of job. *See* DEPT. OF LABOR, NO. 381.687-034, DICTIONARY OF OCCUPATIONAL TITLES (1991) (listing the job as medium strength and an "SVP" of 2); SSR 00-4p, 2000 WL 1898704, at *3 (stating that the Commissioner classifies an "SVP" of 1 to 2 as unskilled work). The ALJ is permitted to rely upon the testimony of a vocational expert to determine how a job is generally performed in the economy. *See Barker v. Astrue*, 459 F. App'x 732, 742 (10th Cir. 2012); *Zaricor-Ritchie*, 452 F. App'x at 825.

Even if the ALJ's finding that the claimant's ability to perform his janitor job is not supported by evidence, that does not upset the ALJ's ultimate conclusion that the claimant could perform his past work, both as he actually performed it and as that work is performed generally. It was the claimant's burden to prove at step four *both* that he 1) cannot perform his past work as a floor technician as he actually performed it, *and* that he 2) cannot perform that job as it is generally performed in the national economy. *See Andrade*, 985 F.2d at 1050. Thus, whatever the evidentiary support for the ALJ's findings about the claimant's past work as janitor, the ALJ's findings that the claimant was capable of performing the floor technician job as that job is actually and generally performed are sufficient to support the ALJ's conclusion that the claimant was capable of performing past relevant work.

Therefore, though the ALJ's step-four findings could have been clearer and better supported by references to the record, the court and finds no reversible error with the ALJ's step-four analysis.

**CONCLUSION**

The court has rejected each of the claimant's pre-step five arguments, leaving only the claimant's step five argument remaining. The court need not address those arguments because the ALJ's step four decision, once affirmed by this court, becomes conclusive on the issue of disability. *See Casias*, 933 F.2d at 801 (stating that the five-step disability review ends as soon as the ALJ's determination is conclusive).

Accordingly, it is

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is **AFFIRMED.** It is further

**ORDERED** that Defendant is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 23rd Day of September, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge